# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| AUSTIN JOHNSON, SHERILL GLASSMAKER, VINCENT GLASSMAKER and JERECA SCHROEDER,<br><br>Plaintiffs,<br><br>vs.<br><br>ALEC WOLF,[1]<br><br>Defendant. | No. C18-4086-LTS<br><br>**ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I.    INTRODUCTION

This case is before me on defendant Alec Wolf's motion (Doc. No. 21) for partial summary judgment. Plaintiffs have filed a resistance (Doc. No. 26) and Wolf has replied (Doc. No. 29). I find that oral argument is not necessary. *See* Local Rule 7(c).

## II.    RELEVANT FACTS

On August 10, 2018, defendant Alec Wolf shot and killed a dog named Zucko in Cherokee County, Iowa.[2] Zucko was owned by plaintiff Austin Johnson. On August 9, 2018, Wolf, as a Deputy Cherokee County Sheriff, had responded to a call regarding a small dog that had been killed by another dog in Cleghorn, Iowa. The owner of the small dog told Wolf that the other dog was a husky. Wolf and other deputies searched the area around Cleghorn for the perpetrating husky but did not find it. The sheriff's office

---

[1] This case initially had two other defendants. Doc. No. 16. The plaintiffs have dismissed their claims against those defendants, leaving Alec Wolf as the sole defendant. Doc. Nos. 30, 31.

[2] The facts set forth in this order are undisputed except where noted otherwise.

eventually concluded that the attacker was Johnson's dog Zucko. However, plaintiffs dispute that Zucko was actually the husky that killed the other dog.

While Johnson was working out of state on August 10, 2018, plaintiff Jereca Schroeder watched Zucko at a residence located at 784 Highway 3 (the property). She was staying at the property with Samuel Seivert. The property was owned by plaintiff Sherill Glassmaker (Sherill), but leased by oral agreement to her son, plaintiff Vincent Glassmaker (Vincent). Vincent permitted Seivert, who is one of his employees, to reside at the property.

At some point on August 10, 2018, Sheriff Jerod Clyde and a deputy informed Wolf that they had tracked Zucko to the property. They attempted to secure Zucko but were unsuccessful. Clyde eventually stopped trying to capture Zucko but ordered his deputies to put Zucko down if Zucko left the property. According to plaintiffs, the sheriff's department informed Johnson early that day of the alleged attack in Cleghorn and requested that he return home to discuss the issue.

Later that day, Wolf and another deputy went to the property. Schroeder was the only other person at the property at the time, unknown to Wolf. Wolf states that Zucko was not restrained in the backyard by a leash, chain or fence. According to plaintiffs, Zucko was unrestrained because Schroeder had let Zucko outside to relieve himself only ten minutes before the shooting. Wolf and the deputy attempted to catch Zucko using a dog-catching pole and food, but Zucko was elusive. Wolf then instructed the other deputy to scare Zucko towards a nearby cornfield. Once Zucko was near the cornfield, Wolf shot and killed Zucko while Zucko was still on the property.

After shooting Zucko, Wolf entered an outbuilding on the property to look for plastic to cover Zucko's corpse. Wolf did not have a warrant, or permission, to enter the property. Wolf and the other deputy eventually removed Zucko's body and threw it into a ditch. In a report about the incident, Wolf falsely stated that he had shot Zucko off the property.

2

According to Wolf, he called Sheriff Clyde on August 12, 2018, and informed him that he had lied about where he shot Zucko. Plaintiffs agree that Wolf informed Clyde of his lie that day, but assert that he did so only because Clyde called and questioned him after receiving a complaint from Vincent Glassmaker. According to the plaintiffs, Vincent called to complain about Zucko's shooting and provided evidence regarding Wolf's actions on that day.

After an internal affairs investigation, Wolf resigned from the sheriff's department. According to plaintiffs, Wolf's employment was initially terminated based on the investigation, but he was later permitted to resign instead.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475

U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## IV.   ANALYSIS

### A.   *Overview of the Claims in Dispute*

Wolf argues that he is entitled to summary judgment on certain of the plaintiffs' claims.³  *See* Doc. No. 24.  Specifically, he seeks summary judgment on Johnson's and Schroeder's federal and state constitutional claims, Vincent's constitutional claims regarding the search of his vehicle, all of the conspiracy claims, and the emotional distress claims advanced by Schroeder, Vincent and Sherill.  *Id.*  In response, plaintiffs provide the following overview as to which claims are, and are not, in dispute:

> Austin Johnston [sic] resists the Motion for Summary Judgment on the matter of the seizure, i.e. unlawful shooting and killing of Zucko in violation of the Fourth and Fourteenth Amendments of the United States Constitution and the Iowa Constitution.
>
> Plaintiffs Sherill Glassmaker and Vincent Glassmaker resist any attempt at dismissal of their claims of violation of the Iowa Constitution and Amendments Fourth and Fourteenth of the U.S. Constitution by virtue of the search of a building on the Glassmaker property at 784 Highway 3, Cherokee County, Iowa.  However, we understand no such Motion addressing those claims is urged.
>
> Plaintiffs do not resist the Motion for Summary Judgment addressed to Jereca Schroeder's claims.
>
> Plaintiff Vincent Glassmaker does not resist the Motion for Summary Judgment addressed to search of personal property, to wit:  The truck parked at 784 Highway 3, Cherokee County, Iowa.
>
> Plaintiffs do not resist the Motion for Summary Judgment addressing a claim of conspiracy.
>
> Therefore, for clarity, Plaintiff Austin Johnson resists the Motion for Summary Judgment addressed to the "taking" or killing of Zucko by Deputy Alec Wolf.

---

³ Wolf expressly notes that his motion for summary judgment does not address "the alleged constitutional violations of Sherrill and Vincent Glassmaker for entering the outbuilding at the property."  Doc. No. 24 at 7 n.4.

5

Doc. No. 27 at 2–3. I will grant the motion for summary judgment as to all claims for which the motion is not resisted. This leaves two sets of claims remaining in this case:

    1.    Johnson's claims that the shooting and killing of Zucko violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution and the Iowa Constitution.

    2.    Sherill's and Vincent's claims that the search of the building on their property at 784 Highway 3, Cherokee County, Iowa, violated their rights under the Fourth and Fourteenth Amendments of the United States Constitution and the Iowa Constitution.

Because Wolf's motion is not directed to the second set of claims, this order will not address those claims. Instead, I will focus on the issue of whether Wolf is entitled to summary judgment on Johnson's constitutional claims relating to the killing of Zucko.

### B. *Johnson's Constitutional Claims*

#### 1. *The Parties' Arguments*

Wolf argues that he should be granted summary judgment on Johnson's constitutional claims for three reasons. Doc. No. 24 at 8, 16. First, Wolf argues that Zucko was not "property" when seized, i.e., when shot by Wolf. *Id.* He argues that an owner's property interest in his or her dog diminishes if the dog escapes or is allowed to roam without supervision or control. *Id.* He also cites a provision of the Iowa Code that states that dogs "shall not be deemed property" if they do not have a rabies vaccination tag. *Id.* at 9, 16–17 (quoting Iowa Code § 351.25 (2018)). Wolf alleges that Zucko had escaped and roamed unsupervised the day before the shooting, was not leashed or supervised when discovered on the property and was not wearing a rabies vaccination tag. *Id.* at 8–10, 16–17. Thus, Wolf argues that Zucko was not property as a matter of law at the time of the shooting. *Id.* Because Zucko was not property, no unconstitutional seizure or deprivation of property occurred. *Id.*

Johnson argues that whether or not Zucko was property at the time of the shooting is a disputed material fact and, thus, a jury issue. Doc. No. 27 at 4–6, 9–10. He agrees

6

that the Eighth Circuit has found that dogs are property and argues that the circuit has adopted a totality of the circumstances approach when determining whether the shooting of an animal constitutes an unreasonable seizure. *Id.* at 5, 9–10 (discussing *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006)). Thus, because there are material issues regarding whether Zucko was dangerous and whether Zucko was wearing rabies tags at the time of the shooting, summary judgment is inappropriate. *Id.* at 5–6, 9–10.

Second, Wolf argues that even if Zucko was property when seized, the seizure was lawful under Iowa Code § 351.26. Doc. No. 24 at 10, 16–17. Under Iowa Code § 351.26, peace officers have a duty "within their respective jurisdictions . . . to kill any dog for which a rabies vaccination tag is required, when the dog is not wearing a collar with rabies vaccination tag attached," unless the jurisdiction has enacted rules regarding the seizure and impoundment of dogs. *Id.* (quoting Iowa Code § 351.26). Wolf argues that there is no evidence that Zucko was wearing a rabies tag, and Cherokee County, the jurisdiction of the shooting, does not have rules regarding the seizure and impoundment of dogs. *Id.* at 10–11, 16–17. Thus, Wolf argues that he was acting in accordance with Iowa law when he shot Zucko. *Id.*

Johnson responds that any apparently lawful actions pursuant to Iowa Code § 351.26 are negated by the fact that Wolf illegally entered the property to shoot Zucko in violation of the Fourth Amendment. Doc. No. 27 at 6–7. Wolf did not have probable cause to enter the property and, in fact, disobeyed direct orders from his superiors by doing so. *Id.* at 5–7. Johnson argues that Wolf's "attempt[s] to cover up the fact he had shot Zucko on the Glassmaker property" further indicate that his actions were unlawful. *Id.* at 6.

Third, Wolf argues that he is entitled to protection from Johnson's claims based on qualified immunity. Doc. No. 24 at 11, 16–17. Qualified immunity protects officers who reasonably believe that they are acting in a lawful manner. *Id.* at 11–12, 16–17. Wolf argues that he acted reasonably in light of his knowledge of the Iowa Code and the

7

facts leading up to the shooting. *Id.* at 11–13, 16–17.

Johnson argues that Wolf is not entitled to qualified immunity due to his unlawful actions and attempted coverups. Doc. No. 27 at 7–8. Wolf disobeyed his superior's orders and took multiple steps to cover up what he had done. *Id.* Johnson also argues that whether an officer is entitled to qualified immunity depends on facts that warrant jury deliberation. *Id.* at 8–10. Thus, because there is sufficient evidence of unlawfulness and bad faith for a reasonable jury to determine that Wolf did not reasonably believe he was acting in accordance with law, he should not be granted summary judgment on the basis of qualified immunity. *Id.*

### 2. Discussion
#### i. Was Zucko Property at the Time of the Shooting?

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects individuals' property from unreasonable seizures by the Government. *Andrews v. City of W. Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006).[4] The Eighth Circuit has found that "[a] dog is considered property for Fourth Amendment purposes," but has not expounded on the grounds for that conclusion. *Id.* (citing *Lesher v. Reed*, 12 F.3d 148, 150–51 (8th Cir. 1994) (conducting Fourth Amendment unreasonable seizure analysis for dog taken by police department without expressly stating that dogs are property or the reasoning for that conclusion)).

The common law has long recognized dogs as property. *Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 700 (1897); *Mendenhall v. Struck*, 224 N.W. 95, 97 (1929); *Anson v. Dwight*, 18 Iowa 241, 244 (1865). However, courts have noted that in comparison to other domesticated animals, common law property rights in dogs are limited. *Sentell*, 166 U.S. at 700 ("[P]roperty in dogs is of an imperfect or qualified

---

[4] Johnson also claims violations of the Fourteenth Amendment and Sections 1 and 8 of Article 1 of the Iowa Constitution. Although I will speak in terms of the Fourth Amendment at times, the property analysis is equally applicable to Johnson's other constitutional claims.

8

nature . . . . They are not considered as being upon the same plane with horses, cattle, sheep, and other domesticated animals."). Courts have also recognized that the scope of an individual's property rights in a dog has always been subject to regulation by states. *Sentell*, 166 U.S. at 704–06 ("Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens."); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001) (looking to state statute to determine property status of dogs for purposes of the Fourth Amendment); *Mendenhall*, 224 N.W. at 97 (Iowa statute governing dog licensing was valid exercise of the state's police power).

Accordingly, whether defined by the common law or by statute, it is clear that a person's property interests in a dog are not absolute. *Nicchia v. New York*, 254 U.S. 228, 230 (1920) ("Property in dogs is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any federal right."); *see also Lunon v. Botsford*, No. 18-3314, 2019 WL 7198501, at *4 (8th Cir. Dec. 27, 2019); *Hansen v. Black*, 872 F.3d 554, 559 (8th Cir. 2017). Dog owners' property rights have been limited by courts. *See, e.g.*, *Hansen*, 872 F.3d at 559 ("A dog owner's protected property interest wanes if [their] pet escapes. . . . [or] when they allow their dogs to run at large, unleashed, uncontrolled, and unsupervised." And dog owner's property rights have been limited by states. *See Sentell*, 166 U.S. at 702–05 (listing and discussing laws created by states that, inter alia, allow dogs to be seized from their owners, and even summarily destroyed, in some circumstances).

Wolf argues that he did not violate Johnson's federal or state constitutional rights because Zucko was not property at the time of the shooting. Wolf argues that Johnson lost his property interests in his dog because "Zucko had escaped and was running at large at some point prior to this incident and was not leashed, controlled or supervised at the time of the incident." Doc. No. 24 at 8. Wolf also argues that under state law,

9

Zucko was not property at the time of the shooting because Zucko was not wearing a rabies tag. *Id.* at 9.

Wolf relies on *Hansen* for his first argument. In that case, a state trooper shot a dog while it was running unsupervised on an interstate highway. *Hansen*, 872 F.3d at 556–57. The dog's presence on a highway created a dangerous situation for traffic, as vehicles had to swerve and stop to avoid it. *Id.* The trooper made multiple attempts to secure the dog, but it eluded him each time. *Id.* at 557. Eventually – after seeing the traffic jam caused by the dog and worrying about the possibility of accidents – the trooper got as close as he could to the dog and shot it. *Id.* The Eighth Circuit concluded that the shooting was not an unreasonable seizure because the dog had escaped, was running in public unsupervised and uncontrolled, and was threatening public safety. *Id.*

While *Hansen* is relevant, it is largely inapplicable to the issue of whether Zucko was Johnson's property at the time of the shooting. The Eighth Circuit's statements regarding at-large and uncontrolled dogs were not related to whether the dog was property, but whether the trooper's decision to shoot the dog was unreasonable. *Id.* at 558–59. The court acknowledged that a Fourth Amendment seizure occurred but explained that the trooper "unquestionably had the authority, indeed a public duty, to seize a large, unleashed dog running unrestrained down a busy high-speed interstate highway." *Id.* at 558. Thus, the issue was whether the amount of force used to accomplish that seizure was unreasonable, not whether "property" was seized. *Id.* The court held that the owner's property interest in her at-large and uncontrolled dog was outweighed by the Government's interest in seizing a dog that was threatening public safety, not that the she had no property interest. *Id.*

Regardless, *Hansen* does not support Wolf's argument. Zucko was discovered at the property, his temporary home, not running at-large in a public setting. It is unclear whether Wolf knew that Zucko was permitted to be at the property. However, Zucko did not leave the property – despite being unrestrained and coaxed to do so multiple times – and Clyde ordered Zucko shot only if Zucko was off the property. These facts weigh

10

against finding that Zucko was at large, uncontrolled or dangerous. Even if Zucko had been at-large and had killed the other dog at some point before being discovered at the property – a disputed factual issue – *Hansen* does not indicate that Johnson had no property interest in Zucko once Zucko was back at his temporary home. In addition, and unlike the dog in *Hansen*, the record does not indicate that Zucko was an imminent threat to public safety while remaining on the property. Johnson did not lose his property interest in Zucko because Zucko may have been at-large sometime before the shooting or because Zucko was unrestrained and unsupervised while outdoors on the property.

For his second argument, Wolf relies on Iowa Code § 351.25, which states:

> All dogs under six months of age, and all dogs over said age and wearing a collar with a valid rabies vaccination tag attached to the collar, shall be deemed property. Dogs not provided with a rabies vaccination tag shall not be deemed property.

Wolf argues that Zucko was not wearing a rabies vaccination tag at the time of the shooting. Thus, he claims, Zucko was not property under Iowa law.

This argument also fails. While the State of Iowa has the authority to determine the circumstances under which a dog is considered property under state law, § 351.25 is not dispositive. In *Sisler v. City of Centerville*, the Iowa Supreme Court held that § 351.25 "applies only to the licensing and regulatory provisions of chapter 351." *Sisler v. City of Centerville*, 372 N.W.2d 248, 252–53 (Iowa 1985). The Court reached this conclusion based on its precedent that dogs are property that may be the subject of larceny under criminal laws. *Id*. (citing *Hamby v. Samson*, 74 N.W. 918, 918 (1898)). In *Hamby*, the Court held that dogs could be the subject of larceny under the criminal statute as a "chattel" because, "[s]urely, it was not the intent of the legislature to recognize dogs as property for the purposes of taxation [and other regulations], and yet leave them to the mercy of thieves." *Hamby*, 74 N.W. at 919. The *Sisler* Court noted that the legislature did not amend the definition of property when it enacted § 351.25 and, indeed, that the then-current definition of "property" in the Iowa criminal code added further support to the holding in *Hamby* that a dog is considered property for purposes of the crime of

11

larceny. 372 N.W.2d at 253 (citing Iowa Code § 702.14). Thus, while a dog without a valid rabies tag is not considered property for purposes of "the licensing and regulatory provisions of chapter 351," such a dog may be considered property for other purposes under Iowa law. *Id.*

*Sisler*'s holding regarding the scope of § 351.25 applies squarely to this case. Obviously, a state's supreme court has final authority to interpret state statutes. *Davis v. Nebraska*, 958 F.2d 831, 833 (8th Cir. 1992). The Iowa Supreme Court has limited the scope and application of § 351.25 to the regulatory provisions of chapter 351. Under *Sisler*, a dog does not lose its status as property under the Fourth Amendment just because it is not considered property under Iowa Code § 351.25. *See, e.g.*, *Frost v. Sioux City, Iowa*, No. 16-CV-4107-LRR, 2017 WL 4126986, at *6 (N.D. Iowa Sept. 18, 2017). In light of *Sisler,* Wolf is not entitled to summary judgment based on § 351.25.

I further note that even without *Sisler*, the summary judgment record would not support a finding that Wolf is entitled to summary judgment under § 351.25. Wolf argues that all evidence indicates that Zucko did not have a rabies vaccination tag. While there is evidence from *after* the shooting that Zucko was not wearing a rabies vaccination tag, there is no evidence that Wolf knew *before* he shot Zucko that Zucko was not wearing tags, or that Wolf shot Zucko *because* Zucko was not wearing tags. This is problematic because Fourth Amendment issues must be analyzed based on the perspective of an objective and reasonable officer at the time of the incident, not based on evidence discovered after the fact with the benefit of hindsight. *See Hansen*, 872 F.3d at 559. Without evidence that Wolf knew, or reasonably believed, that Zucko did not have a rabies tag, Wolf cannot rely on this fact to argue that Zucko was not property when he chose to shoot Zucko. *See Richards v. City of Jackson, Michigan*, 788 F. App'x 324 (6th Cir. 2019) (defendant's argument that he shot a dog because it was not property due to not being licensed lacked persuasive force because there was no evidence that he shot the dog because he believed that it was unlicensed or that its owners had lost their property right). At the very least, whether Wolf knew or reasonably believed that Zucko was not

wearing a rabies tag at the time of the shooting raises a genuine issue of material fact regarding the application of § 351.25 to this case, further demonstrating why summary judgment is inappropriate on this issue.

Viewing the record most favorably to Johnson, Zucko was property for purposes of the Fourth Amendment at the time of the shooting. Wolf is not entitled to summary judgment on the property issue.

### ii. Were Wolf's Actions Lawful?

Wolf argues that he is entitled to summary judgment because his actions were lawful. Under Iowa Code § 351.26:

> It shall be lawful for any person, and the duty of all peace officers within their respective jurisdictions unless such jurisdiction shall have otherwise provided for the seizure and impoundment of dogs, to kill any dog for which a rabies vaccination tag is required, when the dog is not wearing a collar with rabies vaccination tag attached.

Wolf argues that because Zucko did not have a rabies tag, he had a duty as a peace officer to kill Zucko.

Wolf is not entitled to summary judgment on this basis. As explained in *Hansen* and noted above, the right or duty to seize or kill a dog only answers half of the Fourth Amendment analysis. *Hansen*, 872 F.3d at 558–59. While a statutory duty may indicate that a seizure was justified, it does not guarantee that the seizure was reasonable under the Fourth Amendment. *See id*. A Fourth Amendment violation can occur, even when an officer has been granted authority to make a seizure, if the seizure was accomplished with unreasonable force. *Id*.

When the Government claims a right to a warrantless seizure, or if there is a question regarding the force used by an officer to accomplish a seizure, courts must employ a balancing test to determine whether the officer's actions were reasonable. *Id*. at 558; *see also Andrews*, 454 F.3d at 918. The test balances an "individual's Fourth Amendment interests against the relevant government interests" alleged to justify the

13

intrusion. *Hansen*, 872 F.3d at 558; *Andrews*, 454 F.3d at 918.

In this case, there is insufficient evidence to determine, as a matter of law, that Wolf's actions were reasonable. Indeed, viewing the facts most favorably to Johnson, Wolf's actions appear far from reasonable. Unlike the dog in *Hansen*, there is little to no evidence that Zucko was threatening public safety at the time of the shooting. Although Zucko resisted being coaxed off the property, there is no evidence that shooting Zucko was more appropriate or necessary than other ways of protecting society, such as monitoring Zucko until Johnson could return and watch over his dog. Indeed, Johnson alleges that he was on his way home at the time Zucko was shot.

Apart from the question of whether Wolf's seizure is considered reasonable under § 351.26, there are various disputed and unresolved factual issues regarding whether Wolf actually had authority under Iowa Code § 351.26 at the time of the shooting. There are factual disputes as to why Wolf believed Zucko was at large or dangerous when discovered at the property or that Zucko was, or had been, at large or dangerous. Indeed, the fact that Wolf was ordered to shoot Zucko only if Zucko left the property indicates that the sheriff's department believed that Zucko was at his temporary home and not then at large. While § 351.26 does not expressly limit its authorization to at-large dogs, officers are not permitted to kill a dog that is at home and poses no imminent threat simply because it is not wearing tags. *See Andrews*, 454 F.3d at 916, 918.

Further, as discussed above, it is unclear whether Wolf knew, or reasonably believed, that Zucko was not wearing a rabies tag when he decided to shoot Zucko. Thus, there are genuine issues of material fact regarding whether Wolf was acting lawfully under Iowa Code § 351.26. He is not entitled to summary judgment based on the alleged lawfulness of his actions.

### iii.   *Qualified Immunity*

Qualified immunity shields public officials from liability for civil damages if their conduct does not "violate clearly established statutory or constitutional rights of which a

14

Case 5:18-cv-04086-LTS-KEM   Document 33   Filed 01/23/20   Page 14 of 16

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An officer is eligible for qualified immunity if he or she can show that a reasonable officer, with the information possessed at the time of the shooting, "could have believed that his [or her] conduct was lawful in light of the law that was clearly established on the date of the incident." *Andrews*, 454 F.3d at 918–19. To receive immunity for alleged violations of the Iowa Constitution, an officer bears the additional burden of showing that he or she "exercised all due care to conform with the requirements of the law." *Lee v. Dawson*, No. C17-4073-LTS, 2019 WL 3068456, at *12 (N.D. Iowa July 12, 2019) (quoting *Baldwin v. City of Estherville*, 915 N.W.2d 259, 260–61 (Iowa 2018)).

Generally, "qualified immunity is a question of law for the court" that may be determined at the summary judgment stage. *Id.* However, if there are genuine issues of material fact as to whether an officer meets the requirements for qualified immunity, the court must wait to rule on the matter until the factual issues are resolved by the jury. *Id.*; *see also Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).

As previously explained, I find that there are genuine issues of material fact that make determining the issue of qualified immunity inappropriate at the summary judgment stage. There are disputed and unresolved factual issues regarding whether Wolf reasonably believed that he was acting lawfully in accordance with the Federal and Iowa Constitutions and Iowa Code § 351.26. Likewise, for the state constitution claims, there are disputed and unresolved factual issues regarding whether Wolf exercised all due care in acting under § 351.26, if such actions were authorized. Due to these genuine factual issues, I cannot grant Wolf's motion for summary judgment on Johnson's federal and state constitutional claims on the basis of qualified immunity.

## V. CONCLUSION

For the foregoing reasons:

1. Wolf's motion (Doc. No. 21) for partial summary judgment is **granted in part** and **denied in part**, as follows:

15

      a.     The motion is **granted** as to:

          i.     All claims asserted by Jereca Schroeder. She is hereby **dismissed** as a plaintiff.

          ii.     Vincent Glassmaker's federal and state constitutional claims regarding the search of his vehicle.

          iii.     All conspiracy claims asserted by the plaintiffs.

          iv.     All emotional distress claims asserted by the plaintiffs.

      b.     The motion is **denied** as to Austin Johnson's federal and state constitutional claims related to the killing of Zucko.

2.     This case will proceed only with regard to (a) Austin Johnson's federal and state constitutional claims related to the killing of Zucko and (b) Sherill Glassmaker's and Vincent Glassmaker's constitutional claims related to the search of the building on their property.

**IT IS SO ORDERED.**

**DATED** this 23rd day of January, 2020.

_[signature]_

Leonard T. Strand, Chief Judge